## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**LARRY J. SHEPHERD,**
**Claimant Below, Petitioner**

**vs.)    No. 21-0408** (BOR Appeal No. 2055882)
                    (Claim No. 2017018646)

**CORNERSTONE INTERIORS, INC.,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Larry J. Shepherd, by Counsel Patrick K. Maroney, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Cornerstone Interiors, Inc., by Counsel Lisa Warner Hunter, filed a timely response.

The issue on appeal is permanent partial disability. The claims administrator granted a 7% permanent partial disability award on August 21, 2018. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its October 7, 2020, Order. The Order was affirmed by the Board of Review on April 22, 2021.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

> (d) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue

1

in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Shepherd fell and injured his lower back and neck at work on August 10, 2016. A February 15, 2017, right shoulder MRI showed a full thickness tear of the supraspinatus tendon, mild subscapularis tendinopathy with a partial tear, an interstitial delaminating tear of the infraspinatus myotendinous junction, mild to moderate biceps tendinopathy, and moderate acromioclavicular joint arthritis with spurring and osteophytes. David Soulsby, M.D., performed arthroscopic right shoulder surgery on March 27, 2017. The postoperative diagnoses were impingement syndrome and rotator cuff tear. A right shoulder MRI performed on July 14, 2017, showed a possible recurrent partial thickness tear, tendinopathy of the infraspinatus tendon, partial thickness tearing of the subscapularis tendon, degenerative joint disease, and biceps tendinopathy.

Paul Bachwitt, M.D., performed an Independent Medical Evaluation on August 15, 2017, in which he noted that despite undergoing right shoulder surgery, Mr. Shepherd's symptoms persisted. Dr. Bachwitt noted that Dr. Soulsby recommended an additional right shoulder surgery and opined that Mr. Shepherd's compensable injury aggravated preexisting impingement syndrome and acromioclavicular joint arthritis. Dr. Bachwitt diagnosed right shoulder sprain/strain and status post right shoulder arthroscopy and acromioplasty. He opined that Mr. Shepherd had not reached maximum medical improvement and agreed with Dr. Soulsby's recommendation for a second shoulder surgery. Dr. Bachwitt opined that the need for the second surgery was causally related to the compensable injury. He noted that Mr. Shepherd had no preexisting right shoulder conditions. Dr. Bachwitt asserted that the minimal acromioclavicular arthritis seen on imagining was normal for Mr. Shepherd's age and was not a factor in the need for an additional shoulder surgery.

Mr. Shepherd underwent a second arthroscopic right shoulder surgery on October 4, 2017. The post operative diagnoses were right shoulder labra tear, biceps tendinosis, acromioclavicular joint arthritis, and recurrent supraspinatus tendon tear.

On February 26, 2018, Dr. Bachwitt performed an Independent Medical Evaluation in which he noted that Mr. Shepherd underwent a second right shoulder surgery as well as physical therapy. He opined that Mr. Shepherd had not reached maximum medical improvement and required an additional eight weeks of physical therapy.

2

In a May 29, 2018, treatment note, Dr. Soulsby stated that Mr. Shepherd continued to report pain around the acromioclavicular joint. Dr. Soulsby recommended a repeat Independent Medical Evaluation and a Functional Capacity Evaluation.

Dr. Bachwitt performed an Independent Medical Evaluation on July 11, 2018, in which he found that Mr. Shepherd had reached maximum medical improvement. Dr. Bachwitt assessed 7% upper extremity impairment for range of shoulder flexion loss, 1% for abnormal adduction, 5% for abnormal abduction, and 5% for abnormal internal rotation for a total of 18% upper extremity impairment. However, Dr. Bachwitt also found 7% impairment in the uninjured left shoulder, so he apportioned 7% for the right shoulder impairment. Dr. Bachwitt converted the 11% upper extremity impairment to 7% whole person impairment.

The claims administrator granted a 7% permanent partial disability award on August 21, 2018. On October 18, 2018, Dr. Soulsby completed a Diagnosis Update in which he requested the addition of complete rotator cuff tear to the claim. The claims administrator added supraspinatus right shoulder tendon tear to the claim on October 30, 2018.

Bruce Guberman, M.D., performed an Independent Medical Evaluation on September 16, 2019, in which he found that Mr. Shepherd had reached maximum medical improvement. Dr. Guberman assessed 4% upper extremity impairment for abnormal flexion and extension of the right shoulder, 3% for abnormal abduction and adduction, and 2% for abnormal internal and external rotation. From Table 27 of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th 3d. 1993), Dr. Guberman found 10% impairment for resection arthroscopy of the distal right clavicle. Dr. Guberman's combined and converted rating was 11% right shoulder impairment. Dr. Guberman opined that the impairment did not need to be apportioned because there is no indication in the record that Mr. Shepherd had no functional limitations prior to the compensable injury. The fact that Mr. Shepherd has mild range of motion abnormalities in the uninjured left shoulder does not mean that he had impairment in the right shoulder prior to the compensable injury. He therefore recommended an additional 4% permanent partial disability award. Regarding Dr. Bachwitt's July 11, 2018, evaluation, Dr. Guberman opined that Mr. Shepherd had not yet reached maximum medical improvement. He stated that range of motion improved significantly between Dr. Bachwitt's evaluation and his own. Dr. Guberman disagreed with Dr. Bachwitt's decision to apportion the right shoulder impairment. He also stated that Dr. Bachwitt failed to rate Mr. Shepherd's distal clavicle resection under Table 27 of the AMA *Guides*.

In an October 8, 2019, addendum to his report, Dr. Bachwitt reaffirmed his evaluation findings. He stated that apportioning for deficits in the uninjured shoulder is supported by a "document provided during a West Virginia Workers' Compensation training session several years ago regarding IMEs." Dr. Bachwitt also stated that Dr. Guberman's use of Table 27 of the AMA *Guides* was incorrect. According to an April 1, 2006, training session given by Dr. Ranavaya, a claimant must have had at least a ten centimeter excision of the distal clavicle to be ratable. Mr. Shepherd's excision was only three millimeters and is therefore not ratable.

In a July 6, 2020, Record Review, Prasadarao Mukkamala, M.D., disagreed with Dr. Guberman's impairment findings. He stated that Mr. Shepherd's distal clavicle excision was necessary due to a preexisting degenerative condition, not the compensable condition. Dr. Mukkamala asserted that there has to be degenerative arthrosis with or without impingement to require a distal clavicle resection. Mr. Shepherd's resection was necessary to decompress impingement syndrome caused by degenerative arthrosis. Removing the impairment for a clavicle resection, Dr. Guberman's findings show 9% range of motion loss, which converts to 5% whole person impairment. Dr. Mukkamala noted that the 11% whole person impairment Dr. Guberman found, including the distal clavicle excision, was appropriate; however, the 6% impairment for the distal clavicle needed to be apportioned for preexisting degeneration. That therefore leaves 5% impairment.

The Office of Judges affirmed the claims administrator's grant of a 7% permanent partial disability award in its October 7, 2020, Order. It found that Dr. Bachwitt assessed 7% impairment, and Dr. Guberman found 11% impairment. In a Record Review, Dr. Mukkamala opined that Dr. Guberman's impairment rating was incorrect. Dr. Guberman included impairment for the distal clavicle resection under Table 27 of the AMA *Guides*, which should have been apportioned. Dr. Mukkamala explained that the distal clavicle resection was performed to treat noncompensable degenerative arthrosis and should therefore not be included when rating the compensable injury. The Office of Judges found Dr. Mukkamala's opinion to be supported by the evidence of record. The Office of Judges noted that an MRI performed thirteen days after the compensable injury showed spurring and prominent osteophytes, which are arthritic changes. The Office of Judges found this to be strong evidence that Mr. Shepherd's right shoulder acromioclavicular joint arthritis was degenerative. Further, Dr. Bachwitt noted in his report that Dr. Soulsby, Mr. Shepherd's surgeon, opined that the compensable injury aggravated the preexisting impingement syndrome and acromioclavicular joint arthritis. The Office of Judges noted that Dr. Soulsby's postoperative report lists the diagnoses as labral tear, biceps tendinosis, recurrent supraspinatus tear, and acromioclavicular joint arthritis. The Office of Judges stated that the only one of those diagnoses that would require a distal clavicle resection is the acromioclavicular joint arthritis. The Office of Judges concluded that the distal clavicle resection was aimed at treating acromioclavicular joint arthritis, a noncompensable condition. When the 10% for distal clavicle resection is removed from Dr. Guberman's report, only 5% impairment remains. Therefore, the Office of Judges determined that Mr. Shepherd failed to provide evidence that he is entitled to a greater award than the 7% permanent partial disability award already granted. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on April 22, 2021.

On appeal, Mr. Shepherd argues that prior to the compensable injury, he was able to perform all of his work duties. The compensable injury necessitated two right shoulder surgeries. Mr. Shepherd asserts that there is no evidence of prior impairment in the right shoulder, and therefore, apportionment of his permanent partial disability is not necessary.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. A preponderance of the evidence indicates that Dr. Soulsby performed a distal clavicle resection to treat noncompensable acromioclavicular joint arthritis. Dr. Guberman's inclusion of the procedure in his impairment rating was therefore improper. Dr.

4

Bachwitt's finding of 7% whole person impairment was the most reliable and accurate assessment of Mr. Shepherd's impairment.

Affirmed.

**ISSUED: October 18, 2022**

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn